[No. 24001. Department Two. January 5, 1933.]

SAMUEL M. COCHRAN et al., *Appellants*, v. LAKOTA LAND
& WATER COMPANY et al., *Respondents.*[1]

*Shorett, Shorett & Taylor,* for appellants.

*Lane & Thompson* and *Longfellow & Fitzpatrick,* for
respondents.

STEINERT, J.—This is an action to recover a proportionate part of interest maturing upon a note jointly
executed by plaintiffs and the defendants Lakota Land
& Water Company, a corporation, and M. R. Wood and

[1]Reported in 17 P. (2d) 861.

Georgie W. Wood, his wife, the entire interest having theretofore been paid by plaintiffs. Those defendants now appearing as respondents interposed separate demurrers to the complaint, and the same were sustained by the court. The plaintiffs elected to stand upon their pleading, and the court accordingly entered a judgment of dismissal. This appeal was thereupon taken by plaintiffs.

On September 26, 1919, the appellants, who were then the owners of certain real estate in the city of Seattle, executed a written lease of the premises to respondent Lakota Land & Water Company for a term of forty years, with a graduated annual rental, payable in monthly installments. The lease provided, among other things, that the lessee should, within the first thirty days of the term, commence the construction of a brick building on the easterly end of the property. The following provisions of the lease are quoted as containing the portions material to the present inquiry:

"(16) That if it, said lessee, fails to pay the rent or any part thereof at the respective times herein specified, or if it shall fail to pay any taxes, assessments, imposts, excises or other public charges at the respective times herein specified, or if it fails to make any of the payments herein and in this lease specified or intended to be made, or if it fails to perform any of the covenants or conditions whatsoever herein contained and to be and intended to be by it kept and performed and if such failure shall continue for a period of ten (10) days after such failure is called to lessees' attention, in writing, by lessors, the— and thereupon and because of such default and failure, this lease shall be terminated and said lessee shall then and thereupon yield and give up the peaceable possession of said premises and all thereof and all rights of the lessee shall thereupon be forfeited and terminated and this lease shall be at an end and all improvements

made upon said premises and all sums paid thereon shall be forfeited unto said lessors as liquidated damages agreed upon . . .

"Failure of the lessors to insist in any one or more instances upon strict performance of any of the covenants or provisions of this lease, or to exercise any option herein covered, shall not be construed as a waiver or relinquishment for the future of any such covenant, condition or option but the same shall continue and remain in full force and effect. . .

"Each of the parties hereto agree to keep and perform the covenants and conditions to be by them, or it, respectively, kept and performed."

On December 7, 1925, appellants and respondent Lakota Land & Water Company entered into a written agreement which recited that, in consideration of $3,500 paid by the water company, the appellants had joined with such respondent in the execution of a mortgage on the leased premises in the sum of $49,000, of which $14,000 had been used to pay off an existing mortgage theretofore placed on the land by appellants, and that the balance of $35,000 had been paid to the respondent. It was further provided in the agreement that the appellants should pay to the mortgagee the final $14,000 of the mortgage, together with semi-annual interest on such amount from date of the mortgage. The agreement was signed by appellants and by Lakota Land & Water Company through its president, the respondent Wood, but not by Wood or wife in their individual capacities. The note, however, for which the mortgage was given as security, was signed by appellants and by respondents Lakota Land & Water Company and also by Wood and wife.

The agreement contained the following other provisions pertinent to this inquiry:

"Now, THEREFORE, the party of the first part assumes and agrees to pay before delinquent the first $35,000—becoming due on said mortgage in annual

payments with interest according to the terms thereof, and if not so paid by the party of the first part, then and in that event, the parties of the first part, thirty days after default by it on any such payment of either principal or interest, shall forfeit without notice all its right, title and interest in the aforesaid lease as liquidated damages in full and this agreement and the lease above referred to shall be of no more force and effect than as if each had never been written, and 1st. party and M. R. Wood and wife relieved of any further liability . . .

"Nothing in this agreement shall be construed to modify or change in any respect any of the terms or conditions of the lease above referred to."

On April 10, 1926, respondent Lakota Land & Water Company assigned the lease to respondent Richard C. Frankie and defendant Thomas J. McCloskey, who assumed and agreed to pay the mortgage to the extent of $35,000, and to perform the conditions and covenants of the lease. On September 30, 1929, McCloskey and wife assigned their interest in the lease to Frankie. On June 10, 1931, Frankie and wife assigned the lease to defendant E. N. Canedy, who assumed and agreed to pay Frankie's obligation under the note and mortgage. On October 13, 1931, Canedy and wife assigned the right of possession of the leased premises to Burwell & Jones, who thereupon entered into possession thereof, but vacated the same on November 4, 1931.

On December 7, 1931, there became due and payable, on the note and mortgage, interest in the sum of $1,010.63. Appellants thereupon demanded of the respondents the sum of $625.63, which was the proportionate part of the interest payable by them. Upon refusal of respondents to pay, the appellants, in order to prevent foreclosure, paid the entire amount of interest. Appellants allege in their complaint that they had not accepted surrender of the premises, and that

they did not expect to forfeit or cancel the lease. They merely seek to recover the proportionate part of the interest on the note, due from respondents, but paid by appellants.

The question before us is whether the complaint states a cause of action. This, in turn, depends on whether the provisions, quoted above from the lease and subsequent agreement, are to be construed as limiting the appellants to a forfeiture of the lease as their sole remedy, or whether they have the *option* (1) of forfeiting the lease and retaining all sums paid thereon as liquidated damages, or else (2) of suing for specific performance of the various terms of the lease. The problem is by no means free from difficulty. There is, of course, a wealth of authority upon the general subject. But specific cases are not very helpful, for the reason that each case is made to depend largely upon the language used in the particular agreement under consideration. The complexion of a given case depends upon a variety of shades of expression used in the particular instrument.

A cardinal rule, however, adopted by the weight of current authority, is that a provision for forfeiture upon breach by the lessee is not to be construed as a special limitation terminating the lease *ipso facto,* but rather in the nature of a condition subsequent. The rule as established by the weight of authority is indicated in 16 R. C. L., under the subject of Landlord and Tenant, § 637, p. 1118, as follows:

"It is the general rule that provisions in leases for their forfeiture upon the breach of the lessee's covenants are for the benefit of the lessor, and he has the election to determine whether he will insist upon the forfeiture or not. While in some early cases ·in England and in this country, a provision that the lease should become void or words of similar import, upon the nonperformance by the lessee of his agreements

contained therein, were considered in the nature of conditional limitations terminating the lease *ipso facto* upon the happening of such contingency, it was soon realized that such a construction permitted the lessee to take advantage of his own wrong and thus escape liability on a burdensome lease, and it is now the established rule that such a provision is in the nature of a condition subsequent and entitles the lessor at his election to declare the lease forfeited or not.''

In Tiffany on Landlord and Tenant, p. 1368, paragraph D, the subject is treated to the same effect:

''It was at one time the law in England that, in case of a lease for years, a provision that the lease should become 'void' upon a default by the tenant in the performance of any particular stipulation, had the effect of terminating the tenancy immediately, without any action by the landlord, the courts thus in effect regarding such a provision not as a condition, but as a special limitation. This view has now, however, been repudiated in that country, it being recognized that the effect thereof was to enable the tenant, desiring to terminate the lease, to do so by merely making a default, he thus taking advantage of his own wrong. The rule now recognized there, and in most parts of this country, is that, even though the instrument of lease provides that the lease shall become void or terminate upon the breach of a stipulation by the lessee, such a breach does not terminate the tenancy until the landlord has in some way signified his election that it shall do so. And such election by the landlord is *a fortiori* necessary in the case of a lease which provides for a right of re-entry or a forfeiture on breach of a condition. The same principle has been applied in the case of a provision that on default by the lessee he should surrender possession. The effect of these various decisions seems to be that, whatever the language used, whether that adapted to the creation of a special limitation or a condition subsequent, it will, if the contingency referred to is in default by the tenant, be construed as creating an estate on condition subsequent, and not one on special limitation.''

See, also, *Hanley Falls Creamery Co. v. Milton Dairy Co.*, 126 Minn. 226, 148 N. W. 46, 52 L. R. A. (N. S.) 718; *Prescott v. Kyle,* 103 Mass. 381; also, cases collated in 26 Am. Stat. 911, 127 Am. Stat. 87.

We do not seem to have any decisions in this state bearing directly upon the point, so far as leases are concerned; at least, none have been called to our attention. However, upon the kindred subject of vendor and vendee, this court has emphatically expressed itself. In *Asia Investment Co. v. Levin,* 118 Wash. 620, 204 Pac. 808, 32 A. L. R. 578, the contract sued upon contained the following provision:

"Failure of purchaser to complete purchase within time stated, except for defect of title, shall operate as a forfeiture of sum hereby deposited, the same being in settlement of and being hereby fixed as liquidated damages."

Construing that language the court said, on p. 628:

"Unless it is clear that it was the intention that the parties definitely decided to limit their rights, the courts will not interpret language to have that effect. In other words, language in contracts which is subject to two interpretations will be so interpreted as to preserve the rights of all the parties, rather than be interpreted in such a way as to destroy the rights of either one. Applying this rule to the language here, it would seem to be that the proper interpretation to give it is that the $500 paid should be taken 'in settlement of . . . liquidated damages,' the amount of which 'being hereby fixed as liquidated damages.' This interpretation preserves to both the parties all the rights they would have under the contract, whereas an interpretation which would hold that the words 'in settlement of' referred to the settlement of all the rights of the parties under the contract, would result in depriving the vendor of his right to resort to an action for specific performance."

In *McCutchen v. Brink,* 129 Wash. 103, 224 Pac. 605, the plaintiff instituted an action for specific performance of a contract, seeking to recover the unpaid portion of a note given in payment of certain real estate. The contract contained the following provision:

"It is expressly agreed that time is of the essence of this contract, and in case of default by the party of the second part, her heirs or assigns, in any of the conditions above stipulated to be performed by her, then and in that case, this contract shall become void and the party of the second part shall have forfeited her rights hereunder, and said premises shall revert to and revest in said first parties without any declaration of forfeiture or act of re-entry, or any other act to be performed by said first parties, and any payments that shall have been made, shall become forfeited to the parties of the first part, which said payments it is hereby especially agreed shall in that case be deemed as damages hereby liquidated for the nonperformance of this contract by said second party."

The defendant contended that plaintiff's only remedy for the breach was the forfeiture of the contract and the retention of payments made thereon as liquidated damages. The court, in rejecting that contention, quoted extensively from the opinion in the *Asia* case, *supra,* and affirmed the rule laid down therein. The court also quoted from other authorities which laid down the rule that provisions in a contract authorizing forfeiture for failure to pay installments of the purchase price confer on the vendor an additional remedy which is optional with him, and will not, unless the terms of the contract positively require it, be so construed as to permit the purchaser to take advantage of his own fault and escape further liability.

The reasoning of those cases is, we think, appli-

cable here. A lease is, after all, but a contract, and the rule governing contracts in general upon the problem here presented should govern contracts of lease as well. In our opinion, the language of the provisions with which we are here concerned does not clearly express an intention of the parties that the lessor's rights should be limited to a forfeiture. To construe these provisions as respondents contend for would enable them to take advantage of their own wrong, and escape the liability of what they deemed to be a burdensome lease. The interpretation which we place upon the lease and the subsequent agreement will preserve the rights of all the parties and not destroy the rights of either.

Respondents also contend that the clause in the contract which, by its terms, relieved the water company and Wood from further liability upon forfeiture as for liquidated damages, indicated the intention of the parties to limit appellants' remedy. We do not so regard it. That clause merely stated the legal result of a forfeiture, if acted upon by the appellants. Respondents argue that the language should not be disregarded as surplusage, since that would violate a fundamental rule in the construction of contracts. We do not disregard the language at all. We construe it to mean that, if the lessor should exercise his right to forfeit, then further liability of the lessee would cease, otherwise not. Since the lessor did not exercise his right to forfeit, the liability of the lessee did not cease.

We think that the trial court erred in sustaining the demurrers to the complaint. The judgment is reversed, with direction to the court to proceed in harmony with this opinion.

TOLMAN, C. J., MAIN, and BEALS, JJ., concur.

164

[March 16, 1933.]

PER CURIAM.—Respondents, in their petition for rehearing, request, among other things, that there be reserved to them the right to develop and establish, by their pleadings and proof, the true relationship existing between the parties to this action, under the lease, the assignments thereof, and the contract with reference thereto, as set forth in the complaint.

The case was presented to us upon the complaint in the action, a demurrer thereto having been sustained in the lower court and the plaintiff having elected to stand on the complaint. As specifically stated in our opinion, the question before us was whether the complaint stated a cause of action. We held that it did, and directed the lower court to proceed with the action.

The defendants (respondents) are, of course, entitled to present any proper defense that they have showing that the true relationship existing between the parties was other than appears upon the face of the complaint, and that the liability of the respondents is, by reason of facts and circumstances shown by them, different from that asserted by the appellant. Any rights that the respondents may have on a proper showing have not been prejudged.

The petition for rehearing is denied.